J-A13010-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CEMONNE HANNA | : | |
| | : | |
| Appellant | : | No. 187 WDA 2025 |

Appeal from the Judgment of Sentence Entered February 10, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005701-2024

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: July 20, 2026**

Cemonne Hanna appeals from the judgment of sentence of six months of probation and 125 hours of community service imposed after the trial court found her guilty of resisting arrest and disorderly conduct.  We affirm.

The parties stipulated to the following facts stated in the affidavit of probable cause.  On May 25, 2024, Officer Grant Zentgraff of the Allegheny County Police Department was notified by a Spirit Airlines employee that Appellant was going to be denied boarding due to intoxication.  At the time, Appellant was sitting in a wheelchair at the gate, accompanied by her sister, Ericka Hanna, and was screaming profanities in a crowded area surrounded by children and families.  Upon being informed that she would not be permitted to board the flight, Appellant's behavior escalated.  Although initially seated in a wheelchair, Appellant stood up multiple times with ease.  Officer

Zentgraff, along with one female and two male police officers, arrived and escorted Appellant and her sister from the gate area.

As officers guided her and Ericka out of the airport, Appellant was still seated in her wheelchair. While passing crowded restaurants, Appellant repeatedly screamed "fuck you," "fuck them," "fuck you motherfucker, that is why I am suing you." Affidavit of Probable Cause, 6/3/24, at 2. Appellant was verbally warned that she would be arrested if her behavior continued. At that moment, Appellant jumped up and shouted, "take me, let them take me." *Id*. When officers attempted to place Appellant in handcuffs, Ericka wedged herself between Appellant and the officers. A struggle ensued and everyone fell to the ground. Ericka was cuffed. As Officer Zentgraff attempted to restrain Appellant, she tensed her arms and held them close at her side. Refusing to comply with orders, she repeatedly yelled "fuck you bitch, fuck you and your mom". *Id*. Officer Zentgraff eventually was able to restrain Appellant and roll her on her side, but the officer was unable to double lock the handcuffs, which he typically did for safety.

Officer Zentgraff and one other officer succeeded in lifting Appellant to her feet and guided her away from the scene. She refused to walk and stuck her legs out to become "dead weight." *Id*. Police retrieved her wheelchair and sat her on it. As they wheeled her through the airport, she continued to yell "fuck you bitch, I'm suing you." *Id*. at 3. When they reached the exit, Appellant again refused to stand and walk to the police vehicle. The officers

- 2 -

attempted a fireman's carry, but Appellant continued to resist. They eventually were able to place Appellant into the back of the police cruiser.

In light of the aforementioned events, Appellant was charged with public drunkenness, disorderly conduct, and resisting arrest. Her sister was charged with one count each of resisting arrest and disorderly conduct. The matter proceeded to a joint bench trial, where the parties stipulated to the facts outlined in the affidavit of probable cause and Officer Zentgraff's bodycam footage. After the court reviewed the video, it noted that Appellant had also kicked toward the face of the officer who was placing Ericka in cuffs. The court thereafter found Appellant guilty of disorderly conduct and resisting arrest, and not guilty of public drunkenness. Ericka was found not guilty of all charges. Appellant proceeded immediately to sentencing, wherein the court issued the above-referenced sentence.

This timely appeal ensued, with the trial court ordering a statement pursuant to Pa.R.A.P. 1925(b).[1] Appellant complied, and the court authored a responsive Rule 1925(a) opinion. She raises the following sole question for our deliberation: "Whether the evidence was insufficient to convict [Appellant] of resisting arrest where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] created a substantial risk of

---

[1] We remind the court that all Rule 1925(b) orders must specify "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii).

bodily injury to the officer, or employed means justifying or requiring substantial force to overcome the resistance?" Appellant's brief at 5 (unnecessary capitalization omitted).

Appellant presents a challenge to the sufficiency of the evidence, for which "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Ewida***, 333 A.3d 1269, 1279 (Pa.Super. 2025). We analyze this issue mindful of the following principles:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Id***. (cleaned up).

> The offense of resisting arrest is defined as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. To sustain a conviction for this crime pursuant to a theory of substantial force, the Commonwealth must establish the following three

elements: "(1) the defendant act[ed] with the intent to prevent a lawful arrest; (2) using means requiring or justifying a use of force by police; and (3) the force required or justified [wa]s substantial." ***Commonwealth v. Crosby***, 329 A.3d 1141, 1149 (Pa. 2025).

Our High Court has recently pronounced that "substantial force refers to the application of a considerable—not insubstantial—amount of physical power." ***Id***. at 1150 (cleaned up). Since "the circumstances of an arrest are so varied that the question of whether the force used by police was substantial," it is a "fact specific inquiry . . . best entrusted to trial courts and juries, which, as factfinders, are uniquely positioned to make such contextualized factual determinations." ***Id***. Relevant factors include "the physical size and abilities of the officer, those of the arrestee, the circumstances of the physical environment in which the arrest [wa]s taking place, and any other contextual factors." ***Id***. The polestar of this analysis focuses "upon what response would have been required or justified by the defendant's own actions." ***Id***. at 1151.

Acknowledging that the trial court convicted Appellant based upon a theory of substantial force, she argues that "the officer's actual response [was] insufficient to satisfy the definition of substantial force" and such force was not "required or justified" by her actions. ***See*** Appellant's brief at 27. Characterizing the kick towards the officer handcuffing Ericka as "feeble," Appellant maintains that the officer was "easily" able to "push aside her leg and finish handcuffing Ericka." ***Id***. She points out that "three well-trained,

armed police officers" arrested her as a five-foot-three-inch, one hundred and fifty pound female. *Id*. at 27 n.4. The officers took her to the ground, she explains, only because Ericka intervened and not because of Appellant's conduct. *Id*. She concludes that, although she "was certainly belligerent, uncooperative, and resistant with police officers, she did not, as a matter of law, resist arrest within the meaning of [§] 5104." *Id*. at 29.[2]

The trial court, as factfinder, determined that Appellant's actions required substantial force from the officers to overcome her resistance. *See* Trial Court Opinion, 8/25/25, at 5. According to the affidavit of probable cause, the court explained that multiple officers were required to successfully take Appellant into custody. Officer Zentgraff reported that Appellant had tensed her body and held her arms tight against her sides, creating difficulty in handcuffing her. Once she was on her feet, she refused to walk. Appellant also defied the officers' attempt at a fireman's carry to usher her into the police cruiser. Furthermore, the court watched the bodycam footage and observed that while an officer was placing handcuffs on Ericka, Appellant, while actively resisting being cuffed herself, kicked at the officer restraining

---

[2] Appellant cites the notes of testimony from the preliminary hearing. It appears that the transcript from that proceeding was provided to the court at the bench trial, but Appellant neglected to admit it as an exhibit and failed to include it in the certified record. We therefore cannot review it. *See* Pa.R.A.P. 1921, *Note* (providing that we "may consider only the facts which have been duly certified in the record on appeal."). Since the trial court determined that Appellant was guilty of resisting arrest based on the bodycam footage and the facts outlined in the affidavit of probable cause, however, this omission does not affect our review.

Ericka. That officer had to hold Appellant's leg down as the others were attempting to keep control of her upper body. In sum, the court found that the facts established that "substantial force was required to overcome [Appellant's] resistance." *Id*.

We agree with the trial court. The facts outlined in the affidavit of probable cause were sufficient to prove that Appellant acted with the intent to prevent a lawful arrest, used means necessitating the use of force by one female and three male officers, and the force required by the police to overcome Appellant's resistance was substantial. The bodycam footage, which this Court has reviewed, further confirmed the trial court's characterization of the situation. Not only did Appellant scream at officers and citizens, stiffen her body, hold her arms at her sides, and refuse to cooperate with commands, she kicked at the officer who was restraining Ericka. After Officer Zentgraff finally secured Appellant's hands in cuffs, she refused to walk to the exit and became dead weight, forcing officers to attempt an unsuccessful fireman's carry, until she cooperated. Her actions therefore required substantial force from officers to overcome her resistance and execute an arrest. *Accord Crosby*, 329 A.3d at 1150 (holding officer's need to tackle an adult male who had one hand in cuffs to the ground to get him to surrender his free hand amounted to substantial force).

Accordingly, Appellant is due no relief, and we hereby affirm her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/20/2026